UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FATIMAZEHNA NOUINOU,

                Plaintiff,

                -against-

ANTONIO GUTERRES; BEN SWANSON;
PETER DENNIS READE SMITH,

                Defendants.

20-CV-8682 (LLS)

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

    Plaintiff brings this *pro se* action under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101-131. Plaintiff alleges that Defendants took adverse employment actions against her as a "Spaniard from the international zone of Tangier," and based on her sex. (ECF 2 at 3.) By order dated October 23, 2020, the Court granted Plaintiff's request to proceed *in forma pauperis*.

## STANDARD OF REVIEW

    The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

    While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following allegations are from Plaintiff Fatimazohra Nouinou's complaint. Plaintiff was born in the city of Tangier, formerly an "international free zone." (ECF 2 at 8.)[1] She served as an aviation assistant in the United Nations (UN) peacekeeping force but was sexually harassed by Moroccan diplomats and threatened by a Moroccan Ambassador. (*Id.*) Plaintiff left Tangier in 2010, and applied for asylum in the United States in 2011, when she returned to New York.

---

[1] Plaintiff notes that in 1956, Tangier became part of Morocco, which she describes as "an invasion, not an integration." (ECF 2 at 8.)

2

In 2013, Plaintiff was hired as Assistant to the Director of Investigations in the UN Office of Internal Oversight Services. (*Id.* at 9.) During this time, that office investigated Moroccan soldiers serving in UN peacekeeping forces for suspected sexual exploitation and abuse. (*Id.* at 9.) In 2015, Ben Swanson replaced Plaintiff's former supervisor as Director of Investigations. Swanson immediately "abolished" Plaintiff's position, and she filed a complaint with the UN Dispute Tribunal. While the UN Dispute Tribunal proceedings were pending, in 2017, Plaintiff worked in the Executive Office of the Secretary General, Antonio Guterres.

Peter Smith, who at one time had been a Special Assistant to a Moroccan Assistant Secretary General, began "stalking and spying on" Plaintiff. (*Id*. at 9.) Smith allegedly "received bribes from Morocco to slander [Plaintiff] as an asylum seeker." (*Id.* at 5.)

On January 16, 2018, the Office of Counter-Terrorism of the United Nations posted a temporary job opening for a 6-month position as a Programme Management Assistant at the G-5 level, and Plaintiff applied. (ECF 2-1 at 9.) Peter Smith contacted someone in the Office of Counter-Terrorism and "warned him not to hire" Plaintiff because she is "a psycho." (*Id.* at 10.) Despite this, on February 16, 2018, Plaintiff was notified that she was selected for the position. (*Id.*) Work-permit issues prevented Plaintiff from beginning the temporary position until on or about April 24, 2018.

On June 26, 2018, the UN Dispute Tribunal issued a judgment in Plaintiff's favor in her complaint regarding Swanson's personnel decision eliminating her former position with the Office of Internal Oversight Services. (*Id.* at 9-10.) But on appeal, on March 29, 2019, the judgment was reversed. (*Id.* at 11.) Plaintiff alleges that Secretary General Guterres protected Swanson and influenced the decision.

Approximately five months after Plaintiff started her temporary 6-month position at the Office of Counter-Terrorism, on September 28, 2019, that office posted an announcement for a one-year position at the same level, that is, as Programme Management Assistant at the G-5 level. (ECF 2-1 at 9.) Plaintiff did not apply for the one-year position. On October 4, 2019, the Office of Counter-Terrorism selected a candidate for the one-year position from a roster of pre-approved candidates who had applied. Plaintiff's six-month position was set to expire on October 23, 2018, and after a candidate was selected for the one-year term, Plaintiff was notified on October 5, 2018, that her temporary position would not be extended.

On October 19, 2018, Plaintiff requested a management evaluation of the decision not to renew her temporary contract, and her contract was extended to November 9, 2018, while her request for a management evaluation was pending. On November 8, 2018, Plaintiff was notified by letter that the Secretary-General had upheld the decision not to renew her contract.

Plaintiff filed an application on November 27, 2018, with the UN Dispute Tribunal contesting the non-renewal of her temporary contract. (*Id.* at 10.) A judgment in that matter, under docket number UNDT 2019/073, issued on May 1, 2019, rejecting Plaintiff's application as time barred and on the grounds that she had no legitimate expectation of renewal of her temporary 6-month contract and that the reasons for non-renewal were lawful.

On June 27, 2019, Plaintiff appealed the UN Dispute Tribunal's decision to the Appeals Tribunal. The Appeals Tribunal affirmed the decision of the UN Dispute Tribunal, and by order dated March 27, 2020, dismissed the appeal. (*Id.* at 26.) Plaintiff contends that judges of the UN Tribunals are "biased and corrupt" and their rulings are "poor." (ECF 2 at 11.)

Plaintiff now sues three individuals – UN Secretary General Antonio Gutteres; Ben Swanson, Director of the Investigations Division at the UN Office of Internal Oversight

4

Services; and Peter Smith, who Plaintiff alleges has been relocated to a UN position in Hungary. Plaintiff alleges that defendants defamed and harassed her for seeking asylum, and that they retaliated against her, failed to promote her, and terminated her employment. (*Id.* at 5.) Plaintiff invokes 42 U.S.C. § 1981 and Title VII and specifies that she did not exhaust administrative remedies with the EEOC or receive a Notice of Right to Sue. (ECF 2 at 7.) Plaintiff asks this Court to" prosecute" UN Secretary General Guterres, to "indict" UN Director of Investigations Division Ben Swanson, and to "initiate a trial" against Smith for his "discrimination and defamation." She also seeks $7 million in damages, based on injuries to her health and reputation.

## DISCUSSION

**A.     Claims against UN Secretary General Guterres**

Under the Convention on Privileges and Immunities of the United Nations, Feb. 13, 1946, *entered into force with respect to the United States* Apr. 29, 1970, 21 U.S.T. 1418, (the "CPIUN"), the UN enjoys absolute immunity from suit unless "it has expressly waived its immunity." *Id.* art. II, § 2. In addition, the International Organizations Immunities Act of 1945, 22 U.S.C. § 288a(b) (the "IOIA"), provides that international organizations designated by the President receive the "same immunity from suit and every form of judicial process as is enjoyed by foreign governments," and the UN has been so designated. *See Brzak v. United Nations*, 597 F.3d 107, 112 (2d Cir. 2010) (holding that "the CPIUN unequivocally grants the United Nations absolute immunity without exception," and therefore it need not consider plaintiff's argument that the Foreign Sovereign Immunities Act stripped the UN of IOIA immunity in certain circumstances).

The CPIUN also addresses the immunity of individual officials of United Nations. It provides in relevant part: "The Secretary-General and all Assistant Secretaries-General shall be

5

accorded . . . the privileges and immunities . . . accorded to diplomatic envoys, in accordance with international law." *Id.* art. v, sect. 19; *Brzak*, 597 F.3d at 113 ("American courts must dismiss a suit against anyone who is entitled to immunity under either the VCDR or other laws 'extending diplomatic privileges and immunities.'"). "Current diplomatic envoys enjoy absolute immunity from civil and criminal process, . . . [while] former diplomatic envoys retain immunity only 'with respect to acts performed by such a person in the exercise of his functions' as a diplomatic envoy." *Brzak*, 597 F.3d at 113. As the current UN Secretary General, Defendant Antonio Guterres is thus entitled to absolute immunity from suit, and the Court dismisses Plaintiff's claims against Defendant Guterres. 28 U.S.C. § 1915(e)(2)(B)(iii). Plaintiff should not replead her claims against the UN Secretary General in any amended complaint that she files in this action because it would be futile to do so.

**B.    Prosecution of Criminal Charges**

Plaintiff's claim seeking to have Defendant Swanson criminally indicted must be dismissed because a private individual cannot prosecute criminal charges. See *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) ("[T]he decision to prosecute is solely within the discretion of the prosecutor."); *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972) (holding that prosecutors are "immune from control or interference by citizen or court"). The Court therefore dismisses as frivolous Plaintiff's claim seeking to have Defendant Swanson criminally indicted. 28 U.S.C. § 1915(e)(2)(B)(i).

**C.    Claims Under Title VII of the Civil Rights Act**

Plaintiff asserts claims against Defendant Swanson under Title VII of the Civil Rights Act for "abolishing" her position as an Assistant in the UN Office of Internal Oversight Services in 2015, and asserts claim against Smith in connection with the non-renewal of Plaintiff's temporary 6-month contract with the Office of Counter-Terrorism in 2019, and other matters.

6

Plaintiff's Title VII claims against Defendants Swanson and Smith fail, among other reasons, because Title VII provides for liability against employers – not individuals. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995); *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) ("Title VII does not impose liability on individuals.").[2] Plaintiff's claims under Title VII against Defendant Swanson and Smith must therefore be dismissed for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.      Claims Under 42 U.S.C. § 1981**

Under 42 U.S.C. § 1981, all individuals "have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." § 1981(a). To state a claim under § 1981, a plaintiff must allege three elements: "(1) the plaintiff is a member of a racial minority; (2) defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute . . . ." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). The statute extends to conduct by private parties. *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998).

The prohibition against racial discrimination in § 1981 encompasses discrimination based on ancestry or ethnic characteristics, and alienage, *id.* at 180, n.5, but does not encompass discrimination on the basis of national origin, *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 613 (1987) (holding that if plaintiff can show that he "was subjected to intentional

---

[2] Even if Plaintiff could bring a Title VII claim against Defendant Swanson in his official capacity as Director of a Division at the UN, this would be the equivalent of a claim against the UN. *See, e.g.*, *Castanza v. Town of Brookhaven,* 700 F. Supp. 2d 277, 284 (E.D.N.Y. 2010) ("[I]t is duplicative to name both a government entity and the entity's employees in their official capacity."). As set forth above, under the CPIUN, the UN enjoys absolute immunity from suit.

discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981").

### 1. Claims against Defendant Smith

Here, Plaintiff does not provide a short and plain statement in her 269-page complaint about the basis on which Defendant Smith allegedly discriminated against her. Plaintiff alleges that Smith (1) "received bribes from Morocco to slander [Plaintiff] as an asylum seeker" (*id.* at 5); (2) warned another UN division not to hire Plaintiff because she is a "psycho" (*id.* at 10); and (3) "ordered his friend . . . to disseminate to [the] entire UN Headquarters in New York a notice with [Plaintiff's] name, photo, and Moroccan citizenship that [she] had renounced" "in order to expose [her] life to danger" (*id.* at 10).

Plaintiff also states that she is suing Smith for "discrimination and defamation to me, Serving a Dictator Country No. 1 UN Briber 'Morocco' in order to insult a U.S. Permanent Resident (myself) and a U.S. Citizen (my husband)." (*Id.* at 11.) Finally, Plaintiff alleges generally that she was discriminated against as a "Spaniard from [the] former international zone of Tangier" and describes Morocco as "the occupying power of [her] birthplace." (*Id.* at 3.) Because Plaintiff's allegations are convoluted, it is unclear if she is asserting discrimination based on her place of origin (Tangier), which § 1981 does not cover, rather than based on her ancestry or ethnic characteristics or alienage, which § 1981 does cover. *Al-Khazraji*, 481 U.S. at 613; *Anderson*, 156 F.3d at 180 n.5. Plaintiff's allegations are therefore insufficient to plead that she was discriminated against in activity covered by § 1981 based on her protected characteristics.

Plaintiff also alleges that she "was retaliated against because [she is] a woman," (ECF 2 at 11), though she does not specify facts about what any defendant did or failed to do because of her sex. Claims of sex discrimination do not arise under § 1981. *Anderson*, 156 F.3d at 170

(citing *Runyon v. McCrary*, 427 U.S. 160, 167 (1976)). Plaintiff's allegations thus fail to state a claim on which relief can be granted against Defendant Smith under § 1981.

### 2. Claims against Defendant Swanson

Plaintiff alleges that when Defendant Swanson was appointed Director of the Investigations Division at the UN Office of Internal Oversight Services in 2015, he immediately abolished her position as assistant to the Director. (ECF 2 at 9). First, even assuming the four-year limitations period in 28 U.S.C. § 1658 governs Plaintiff's claim, any claim under § 1981 arising in 2015 was time-barred when Plaintiff filed this complaint in October 2020, unless tolling applies. *See Jones*, 541 U.S. at 382 (holding that if claim was made possible by the 1991 amendment adding § 1981(b), then it "is governed by [28 U.S.C.] § 1658's 4-year statute of limitations"). Moreover, Plaintiff seems to allege that Swanson eliminated Plaintiff's position because of her "battle against UN corruption" (ECF 2 at 9) and not because of discrimination on a basis protected under § 1981. Plaintiff's allegations thus fail to state a claim on which relief can be granted against Defendant Swanson under § 1981.

### E. State Law Claims

Plaintiff alleges that Defendant Smith defamed her and engaged in other conduct that violates state law.[3] (ECF 2 at 10.) Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that

---

[3] The elements of a defamation claim under New York law are: (1) a false statement, (2) published without privilege or authorization to a third party, (3) constituting fault, and (4) that either causes special harm or constitutes defamation *per se. See also Peters v. Baldwin Union Free School Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (principal's statements to superintendent about a staff member's inability to carry out her professional duties due to mental illness was entitled to qualified privilege to "make[ ] a bona fide communication upon a subject in which he [had] an interest, or a legal, moral, or social duty to speak, [where] the communication [was] made to a person having a corresponding interest or duty").

9

they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see Lastra v. Barnes and Noble Bookstore*, ECF 1:11-CV-2173, 35, 2012 WL 12876, at *8 (S.D.N.Y. Jan. 3, 2012). At this stage, the Court assumes without deciding that Plaintiff's state law claims from part of the same case or controversy as her claims that arise under federal law.

Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having concluded that the complaint fails to state a claim arising under federal law, the Court is inclined to decline supplemental jurisdiction over any state-law claims Plaintiff may be asserting, whether against Defendant Smith or Swanson.

It is unclear, however, if Plaintiff may be able to invoke the Court's diversity jurisdiction. Diversity of citizenship exists between "citizens of a State and citizens or subjects of a foreign state," 28 U.S.C. § 1332(a)(2), or between "citizens of different States" in which citizens of a foreign state are additional parties, *id.* § 1332(a)(3). "Diversity is lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002) (relying on *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 381 (1959)). *See also Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir.1980) ("The fact that alien parties were present on both sides would destroy complete diversity"); *Franceskin v. Credit Suisse*, 214 F.3d 253, 257 (2d Cir. 2000) ("[F]ederal courts lack subject matter jurisdiction over state law claims among aliens.").

10

Section 1332 treats "citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States" as citizens of the state in which they are domiciled. 28 U.S.C. § 1332(a)(2); *see also Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991) ("[O]nly the U.S. citizenship of a dual citizen determines the application of diversity jurisdiction.").

Plaintiff alleges that she is married to a U.S. Citizen and has been admitted to permanent residence in the United States and lives in New York. It therefore appears from these allegations that for diversity purposes, Plaintiff is a citizen of New York. Plaintiff has not pleaded any facts, however, about the citizenship of Defendant Swanson or Smith. Plaintiff therefore fails to show that there is complete diversity of citizenship and the Court cannot exercise diversity jurisdiction over this action. If Plaintiff chooses to file an amended complaint, she may wish to include allegations showing whether the Court can exercise diversity jurisdiction over this action.

**F.     Leave to Amend**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *see also Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987) (holding that a district court generally should allow a plaintiff "to drop dispensable nondiverse defendants whose presence would defeat diversity of citizenship."). The Court grants Plaintiff leave to file an amended complaint if she wishes to replead her claims against Defendant Smith and/or Swanson and directs Plaintiff to plead facts in her amended complaint (1) stating a claim against Smith and/or Swanson that arises under federal law; or (2) demonstrating that the Court has diversity jurisdiction. Because the U.N. Secretary General

11

has absolute immunity, and individuals cannot be sued under Title VII, the Court directs Plaintiff not to replead any claims against the U.N. Secretary General, nor to replead her Title VII claims.

In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a) give the names and titles of all relevant persons;

b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

If Plaintiff needs legal advice related to this matter, she may contact the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are

representing themselves in civil lawsuits in this Court. A copy of the flyer with details of the clinic is attached to this order.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. Plaintiff's claims against UN Secretary General Antonio Gutteres, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), are dismissed because he is immune from suit. 28 U.S.C. § 1915(e)(2)(B)(iii).

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 20-CV-8682 (LLS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the federal claims will be dismissed for failure to state a claim upon which relief may be granted, and the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

SO ORDERED.

Dated:   October 23, 2020
         New York, New York

                                                     *Louis L. Stanton*
                                                     Louis L. Stanton
                                                        U.S.D.J.