UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FATIMAZOHRA NOUINOU,

                Plaintiff,

        -against-

PETER DENNIS READE SMITH,

                Defendant.

20-CV-8682 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed this complaint alleging that Defendants violated her rights. The Court directed Plaintiff to amend her complaint to address deficiencies in her original pleading. Plaintiff filed a second amended complaint on May 28, 2021, and the Court has reviewed it. The action is dismissed for the reasons set forth below.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the

pleader is entitled to relief.

The Supreme Court has held that, under Rule 8, a complaint must include enough facts to

state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the

Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing

the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals

of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550

U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court

must determine whether those facts make it plausible – not merely possible – that the pleader is

entitled to relief. *Id.*

## BACKGROUND

Plaintiff Fatimazohra Nouinou alleges the following in her Second Amended Complaint.

Plaintiff met Peter Smith in 2004, when they both worked for the United Nations (UN). (ECF 16

at 5.) In January 2018, Smith told Plaintiff about a vacant position in the UN Office of Counter-

Terrorism (OCT).[1] Plaintiff applied for and was offered a six-month position as Programme

Management Assistant with OCT, beginning on March 1, 2018. Plaintiff attaches to the

complaint a contract which states that her temporary appointment "expires without prior notice

---

[1] Plaintiff alleges that her earlier "fixed-term employment [with the UN]. . . had been
unlawfully abolished in 2016." (ECF 16 at 12, ¶ 30.)

on 23rd October 2018" and "does not carry any expectancy, legal or otherwise, of renewal."
(ECF 16-1 at 2-3.)

Plaintiff informed the OCT that she had a work permit valid for two years, from February
2018 to February 2020. (ECF 16 at 13, ¶ 33.) Plaintiff had renounced her Moroccan citizenship
and applied for political asylum from Morocco. (*Id.*) Smith "bec[a]me obsessed with [Plaintiff's]
U.S. Work Permit when she . . . informed him that she had obtained it through her [a]sylum"
application. (*Id.* at 13, ¶ 34.). Smith "invent[ed] an issue with [Plaintiff's] U.S. Work Permit,
with [the] intention [of] impeding [her] recruitment." (*Id.* at 5.) He asked "questions about
[Plaintiff's] asylum [request,] demanding to see both [her] asylum application and residency
applications." (*Id.* at 6.) Plaintiff eventually discovered that Smith "had a Plot-Plan with
Morocco to approach [Plaintiff] in order to find out about [her] Political Asylum against
Morroco and get [her] out of the UN." (*Id.*)

At the first OCT meeting that Plaintiff attended in her new temporary position, the OCT
Deputy Director introduced her to the thirty meeting participants as Moroccan. Immediately after
the meeting, Plaintiff sent an email to all OCT employees "informing everybody about her true
identity." (*Id.* at 36.) Smith became upset and started calling Plaintiff on the phone and yelling at
her," and he eventually "launched his campaign to get rid of her." (*Id.* at 14, ¶ 36.)

Smith "built a false image about [Plaintiff] in OCT as a Moroccan." (*Id.* at 6.) Smith's
"suspicious actions started worrying [Plaintiff], especially [the fact that] he sent [her] a video of
ICE deporting an illegal alien." (*Id.*) Plaintiff "ordered [Smith] to refrain from his harassment [of
her] and demanded that he . . . keep [his] distance from [her] and not interfere [with her] U.S.
work permit." (*Id.*)

Smith went to the restaurant where Plaintiff's husband worked to speak with him without Plaintiff's knowledge. Smith allegedly intended "to harass and intimidate [Plaintiff's] husband at his workplace outside the UN, talking to him about his wife [Plaintiff] in public in a loud voice and in front of strangers as a way to cruelly belittle and insanely undermine her." (*Id.* at ¶ 79.) Smith also "organized a New Year's Holiday Party in the Restaurant where Plaintiff's husband" worked. (*Id.* at 14, ¶ 9.) "Plaintiff's husband, after being harassed at his workplace by Defendant . . . had to quit his job for safety and security reasons, to protect himself and his wife." (*Id.* at 22, ¶ 94.)

Plaintiff suggests that Smith "was hired by Morocco to conduct his Espionage Activity on Plaintiff for the benefit of Morocco." (*Id.* at 16, ¶ 52.) Smith hid "from [Plaintiff] his secret plan that he wanted her to be his spy," and he eventually "terminated her contract to conceal his plot that he had hired her for his hidden spying agenda [but] he had to get her out when [he] realiz[ed] that she would not fit . . . such a role." (*Id.* at 17 ¶ 56.)

OCT "advertised the post [that] Plaintiff was filling and hired a similarly qualified applicant" for the position that Plaintiff had held on a temporary contract. (*Id.* at 19, ¶ 69.) An applicant was selected for the fixed-term position before Plaintiff had a chance to apply for it. (*Id.* at 14, ¶ 37.)

In November 2018, before "the end of [the] business day on her last day of the contract" and before Plaintiff had "completed all of her tasks," Smith sent a letter to all security officers informing them that she no longer had a contract with the UN and "needed to be escorted [on] UN premises if [she] want[ed] to enter." (ECF 16 at 17, ¶ 57; ECF 16-1 at 99.) Smith also "restrict[ed Plaintiff's] access to [her] office, [her] computer, and [her] email." (*Id.*) Smith "ordered his friend Michael Browne in the Department of Safety and Security (DSS) to issue a

Public Derogatory Notice with Plaintiff's name, picture and Moroccan citizenship that she renounced . . . to [the] entire UN Secretariat." (*Id.* at 19, ¶ 71.) This subjected Plaintiff "to ridicule, contempt, hatred, shame, disgrace and racism as [Plaintiff] started noticing UN Staff Members running away from her and her husband whenever they cross them on the streets . . . ." (*Id.*) Plaintiff "had to hire a Body Guard" to access her personnel file at the UN because she knew "that U.S. Authorities would never intervene should she face an attack at the UN." (*Id.* at 24, ¶ 101.)

On an unspecified date, Smith called OCT Manager Rocco Messina on the phone and told him that Plaintiff "is a psycho" and warned him not to recruit her. (*Id.* at 19, ¶ 70.) Plaintiff contends that other UN staff members "are undermined" by Smith, and she speculates that he has an association with the Central Intelligence Agency (CIA). (*Id.* at 10, ¶ 14.) She "requested an investigation into [Smith's] suspicious activities" from the UN and "U.S. Authorities." (*Id.*) Because of Defendant Smith's actions, "it is now difficult for [Plaintiff] to obtain a job at the UN." (*Id.* at 18, ¶ 66.)

On November 27, 2018, Plaintiff brought a UN Dispute Tribunal Proceeding in connection with the non-renewal of her temporary contract. (ECF 16-3 at 3.) On May 1, 2019, the Dispute Tribunal rejected Plaintiff's application, finding that she failed to substantiate that the reason for non-renewal of her temporary appointment was unlawful.[2] (ECF 16-3 at 30.) By decision dated March 27, 2020, the UN Appeals Tribunal affirmed the Dispute Tribunal's decision and dismissed Plaintiff's appeal. (*Id.* at 70.)

---

[2] Plaintiff attaches her email to the UN Dispute Tribunal dated May 3, 2019, which states, among other things.: "My asylum and Morocco should not be on the public judgment because they are triggering my kidnapping by Morocco. . . . The Judge has no single right to provoke my death." (ECF 16-3 at 33.)

In the Second Amended Complaint, Plaintiff asserts claims under Title VII of the Civil Rights Act; 42 U.S.C. § 1981; and state law, under the Court's diversity jurisdiction. Plaintiff seeks damages, to be reinstated to employment at the United Nations, and for the DSS notice identifying her citizenship as Moroccan to be retracted.

## DISCUSSION

### A.    Discrimination Claims

Plaintiff brings employment discrimination claim against Defendant Smith under Title VII and 42 U.S.C. § 1981. As set forth in the Court's March 30, 2021 order, no claim under Title VII will lie against an individual defendant. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995); *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) ("Title VII does not impose liability on individuals."). The Court therefore dismisses Plaintiff's Title VII claim against Defendant Smith for failure to state a claim on which relief can be granted.

Moreover, it would be futile to grant Plaintiff leave to amend her complaint to assert Title VII discrimination claims against her employer because the UN is immune from suit.[3] *See Brzak v. United Nations*, 597 F.3d 107, 111 (2d Cir. 2010) (The Convention on the Privileges and Immunities of the United Nations ("CPUIN" or "General Convention") "extends absolute

---

[3] District courts have also consistently concluded that employment discrimination lawsuits do not fall within the 'commercial activity' exception to the UN's immunity. *See, e.g., Koumoin v. Ban Ki-Moon*, No. 16-CV-2111, 2016 WL 7243551, at *5 (AJN) (S.D.N.Y. Dec. 14, 2016) ("[E]mployment discrimination claims such as Koumoin's do not fall within the 'commercial activity' exception" to immunity); *Osman v. Annan*, No. 07- 00837-CV-W-NKL, 2008 WL 2477535, at *2 (W.D. Mo. June 16, 2008) ("Courts have consistently found that . . . immunity applies to employment-related suits against officials of international organizations."); *Van Aggelen v. United Nations*, No. 06-CV-8240 (LBS), 2007 WL 1121744, at *2 (S.D.N.Y. Apr. 12, 2007) (holding that plaintiff's complaint, which alleged employment discrimination on account of the plaintiff's disability, did not fall within the "commercial activity" exception); *see also Mendaro v. World Bank*, 717 F.2d 610, 615-16 (D.C. Cir. 1983) ("[T]he purposes of an organization could be greatly hampered if it could be subjected to suit by its employees worldwide.").

immunity to the United Nations."); *Van Aggelen v. United Nations*, 311 F. App'x 407, 409 (2d

Cir. 2009) ("The United Nations enjoys absolute immunity under the U.N. Charter, [the CPUIN],

and the International Organizations Immunities Act ("IOIA").").[4]

Turning to Plaintiff's claims against Defendant Smith for race discrimination under

section 1981, such claims can be asserted against an individual, as well as against an employer.

*Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) (holding that to make out a

claim for individual liability under section 1981, "a plaintiff must demonstrate some affirmative

link to causally connect the actor with the discriminatory action."). Moreover, although senior

executives of the UN – including the Secretary General of the United Nations, Under

Secretaries-General and Assistant Secretaries-General of the United Nations–enjoy full

diplomatic immunity, CPIUN art. V, § 19, other UN employees do not, *Van Aggelen v. United

Nations*, 311 F. App'x at 409 ("[A] U.N. employee, does not enjoy full diplomatic immunity.").

Nevertheless, a UN employee is shielded by functional immunity under the General Convention

for "all acts performed . . . in [the employee's] official capacity." General Convention, art. 5,

§ 18(a).

As an international organization, the UN is subject to the IOIA, 22 U.S.C. § 288 *et seq*.

*See* Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946). In addition to the functional

immunity available to UN employees under the General Convention, under section 7(b) of the

---

[4] The Court also notes that "the Second Circuit Court of Appeals has rejected the argument that participating in the [United Nations Dispute Tribunal] constitutes a waiver of immunity in American courts." *Koumoin v. Ban Ki-Moon*, No. 16-CV-2111, 2016 WL 7243551, at *5 (AJN) (S.D.N.Y. Dec. 14, 2016) (citing *Brzak v. United Nations*, 597 F.3d 107, 111 (2d Cir. 2010)). "[P]articipation in the UNDT and UNAT was not meant to constitute a waiver of the immunity enjoyed by the UN and Secretary-General. Rather, these tribunals were meant to serve as alternative dispute resolution mechanisms specifically for those cases in which the official had not waived his immunity." *Id.* at *5.

IOIA, UN officers and employees are immune from suit and legal process "relating to acts performed by them in their official capacity and falling within their functions as [ ] officers or employees, except insofar as such immunity may be waived by the [UN]." IOIA, 22 U.S.C. § 288d(b).

Because the allegations in the Second Amended Complaint arise from Plaintiff's employment at the UN and relate to acts performed by Smith within his official capacity as a UN employee, Smith enjoys functional immunity from suit for Plaintiff's claims. *See, e.g.*, *Van Aggelen*, 2007 WL 1121744, at *2  ("[A]lthough plaintiff couches his claims of discrimination by citing Title VII of the 1964 Civil Rights Act . . ., such an end run on the § 7b of the IOIA is not permitted by case law. Because plaintiff's claims cover acts that were taken purely in an official capacity or in furtherance of U.N. business, they are dismissed."), *aff'd*, 311 F. App'x 407 (2d Cir. 2009); *Boimah v. United Nations Gen.l Assembly*, 664 F. Supp. 69, 71 (E.D.N.Y. 1987) (noting that individual officers of the UN General Assembly would have been immune from plaintiff's employment discrimination action under section 7(b) of the IOIA, had plaintiff chosen to sue them individually); *Tuck v. Pan Am. Health Org. et al.*, (D.C. Cir. 1981) 668 F.2d 547, 550, n 7 (Director of Pan American Health Organization (PAHO) was immune under IOIA section 7(b) from plaintiff's breach of contract and race discrimination claims to the extent that "the acts alleged in the complaint relate to [his] functions as PAHO Director"); *Askir v. Boutros-Ghali*, 933 F. Supp. 368, 372 (S.D.N.Y. 1996) (holding that employment decisions are "precisely the type of official activity which § 7(b) of IOIA was intended to immunize").

Plaintiff's section 1981 claims against Defendant Smith in connection with her employment and any other UN matters, are therefore dismissed. [5] 28 U.S.C. § 1915(e)(2)(B)(iii).

**B.     Tort Claims Involving Plaintiff's Husband**

The only allegations of the Second Amended Complaint that might be construed as asserting claims against Defendant Smith arising outside of the context of Plaintiff's employment are her allegations that Smith (1) went to the restaurant where Plaintiff's husband works to speak with him about her, and (2) scheduled a holiday party at the restaurant. Generally, once the federal claims over which the Court has original jurisdiction have been dismissed, the Court declines to exercise supplemental jurisdiction of state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction.").

Here, however, Plaintiff invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332. She alleges that she is a legal permanent resident of the United States domiciled in New York. (ECF 16 at 8, ¶ 7.) She sues Defendant Smith, alleging that he is a United States citizen who works in Budapest, Hungary, and New York. (*Id.* at 3-4.) Plaintiff describes Defendant Smith as a citizen of Massachusetts (*id.* at 8, ¶ 7), though she does not provide an address for Defendant in Massachusetts or allege any facts showing that he is domiciled in Massachusetts while working in Hungary and New York. These allegations are arguably insufficient to meet Plaintiff's burden of establishing diversity jurisdiction.

_____

[5] Even if Defendant Smith were not immune from suit, Plaintiff fails to plausibly allege that she was discriminated against in employment on the basis of her ancestry or ethnic origin. She therefore does not state a claim under section 1981.

Because the Court can exercise supplemental jurisdiction of the state law claims, the Court nevertheless has jurisdiction to consider whether Plaintiff's allegations about Smith's interactions with her husband suffice to state a claim against Defendant Smith. Plaintiff alleges that on an unspecified date, Smith went to the restaurant "demanding to talk to him about his wife." (ECF 16 at 14, ¶ 39.) She further alleges that Smith did so "in a public place in front of strangers" in order to "cruelly belittle and insanely undermine her and her husband." (*Id.*)

First, as a non-attorney, Plaintiff cannot bring claims on behalf of another, and she therefore cannot bring claims on behalf of her husband. *See U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another person's behalf in the other's cause." (internal quotation marks and citation omitted)); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause.").

Second, even assuming that Plaintiff is asserting her own claim about Smith's interaction with her husband, Plaintiff does not plead any facts about what Smith said; it is therefore unclear whether the incident was undertaken in Smith's official capacity as a UN employee, and thus a matter for which Smith enjoys functional immunity.

Finally, even if Defendant Smith were not immune, the facts alleged do not plausibly suggest a violation of Plaintiff's rights. Absent an allegation that Defendant Smith made a false statement, Plaintiff fails to state a claim a claim under New York law for slander. "While New York pleading rules require a party claiming defamation to allege the 'particular words complained of' in the complaint, *see* N.Y. C.P.L.R. 3016(a), state procedural rules do not apply to federal courts sitting in diversity," and federal courts instead apply the pleading standards set

forth in Rule 8 of the Federal Rules of Civil Procedure. *Treistman v. Wacks*, No. 12-CV-1897, 2017 WL 639322, at *4 (N.D.N.Y. 2017). To plead a claim for defamation or slander in federal court, a plaintiff must "identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and (4) the third parties to whom the statements were published." *Id.* (citing *Hillary v. Vill. of Potsdam*, No. 7:12-CV-1669, 2015 WL 902930, at *11 (N.D.N.Y. Mar. 3, 2015)). Plaintiff's allegation that Smith said something to her husband in public in order to "cruelly belittle and insanely undermine her" is insufficient to plead that Smith slandered her by making a false and defamatory statement.

Plaintiff's allegation that Defendant Smith scheduled a holiday party at the restaurant where her husband worked is also insufficient to plausibly allege a violation of her rights. The Court therefore dismisses Plaintiff's state law claims for failure to state a claim on which relief can be granted. To the extent that Smith's actions were taken in connection with his UN employment, he also enjoys functional immunity for claims arising from such actions.

## C.     Leave To Amend

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)). But a court has inherent power to dismiss without leave to amend or replead in "where … the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (citation omitted), or where amendment would otherwise be futile, *Hill v. Curcione*, 657 F. 3d 116, 123-24 (2d Cir. 2011); *see also Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015) (holding that federal-question jurisdiction is lacking where the claims are "wholly insubstantial and frivolous," "essentially fictitious," or "obviously without merit" (internal quotation marks and

citations omitted)). Here, Plaintiff has already amended her complaint twice, and the Court

therefore declines to grant further leave to amend as it appears that it would be futile to do so.

## CONCLUSION

Plaintiff's second amended complaint, filed *in forma pauperis* under 28 U.S.C.

§ 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on

the docket.

SO ORDERED.

Dated:     September 22, 2021
           New York, New York

_Louis L. Stanton_
           Louis L. Stanton
           U.S.D.J.